UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Hakan Yalincak,<br>　　　*Petitioner*,<br><br>　　　　*v.*<br><br>United States of America,<br>　　　*Respondent.* | Civil No. 3:08cv1453 (JBA)<br>Civil No. 3:08cv1454 (JBA)<br><br><br>September 28, 2011 |

RULING ON MOTION TO VACATE OR SET ASIDE CONVICTION AND
SENTENCE

Petitioner Hakan Yalincak petitions for a writ of habeas corpus under 28 U.S.C. § 2255.[1] He claims that (1) the Government breached agreements at sentencing by engaging in sentencing advocacy and failed to disclose fully his cooperation, to which his counsel did not object; (2) his counsel was ineffective at sentencing by failing to inform the Court of the immigration consequences that would flow were the Court to impose an additional period of incarceration; (3) the guilty plea in the bank fraud indictment was not knowing and voluntary; (4) counsel was ineffective in failing to move to dismiss the indictment; (5) Petitioner was singled out for prosecution in violation of the Fifth Amendment; and (6) the Government breached agreements entered into with Petitioner by failing to inform the United States Immigration and Customs Enforcement ("ICE") of his mother's cooperation in connection with immigration proceedings against her.  For the following reasons, Mr. Yalincak's petition will be denied without need of a hearing.

---

[1] He petitions in the alternative for a writ of error coram nobis under 28 U.S.C. § 1651, but Federal Rule of Civil Procedure 60(e) abolished writs of coram nobis.

I.      Factual Background

On June 6, 2005, Hakan Yalincak, a Turkish citizen, pleaded guilty to one count of bank fraud in violation of 18 U.S.C. § 1344 (3:05cr111(JBA)) and one count of wire fraud in violation of 18 U.S.C. § 1343 (3:05cr153(JBA)). He was sentenced by this Court on April 11, 2007 to 42 months imprisonment and five years supervised release, with 20 months credit for time served. He was released from custody of the Bureau of Prisons on September 24, 2008 to begin his supervised release. Almost immediately, he was taken into ICE custody pending the resolution of his immigration status, removal proceedings were instituted against him, and he was deported to Turkey, where he now resides.

Mr. Yalincak timely filed a notice of appeal on April 20, 2007 in *United States v. Hakan Yalincak*, 07–1655–cr, but entered a voluntary dismissal of that appeal on August 28, 2007. (Exs. 1, 13 to Gov't Resp. [Doc. # 11].) Mr. Yalincak, now on supervised release and with court–appointed counsel, petitions to vacate his conviction and sentence under 28 U.S.C. § 2255.

III.     Discussion

The Government argues that because Mr. Yalincak voluntarily dismissed his appeal, issues that could have been appealed, including the Government's alleged breach of the plea agreement at sentencing, are procedurally defaulted. "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1998). In particular, the Supreme Court has strictly limited the circumstances under which a guilty plea may be attacked on collateral review. "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508

2

(1984) (cited in *Bousley*, 523 U.S. at 621).  Noting that the  "concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas,"  *United States v. Timmreck*, 441 U.S. 780, 784 (1979), the *Bousley* Court cautioned that "even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review. "  *Id.*  Here, Mr. Yalincak's notice of appeal, 07-1655-cr, was voluntarily dismissed, and thus, petitioner's claims of the Government's breach of the plea agreement at sentencing and that his plea was not voluntary or intelligent were never raised on direct review and are both procedurally defaulted, unless he can demonstrate either (1) cause for failing to raise the issue and prejudice resulting therefrom or (2) actual innocence.[2]  *United States v. Rosario*, 164 F.3d 729, 732 (2d Cir. 1998).  Because the circumstances surrounding Mr. Yalincak's voluntary withdrawal of appeal create some uncertainty, as discussed *infra*, in an abundance of caution the Court will not deem these issues procedurally defaulted, but instead will consider their merits. In addition, since claims for ineffective assistance of counsel are not subject to the procedural default bar, *Massaro v. United States*, 538 U.S. 500, 504 (2003), the Court will also consider Mr. Yalincak's claims of ineffective assistance of counsel, which includes issues of representation on appeal.

A.     Breach of the Plea Agreement at Sentencing

Yalincak argues that he is entitled to habeas relief because the Government engaged in sentencing advocacy by submitting a sentencing memorandum that included the

---

[2] To establish actual innocence, a petitioner must demonstrate that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623.  Mr. Yalincak has not raised a claim of actual innocence, so the Court's review is limited to the cause–and–prejudice ground.

Government's reservations about Petitioner's value as a witness and the Government's doubts that Petitioner had actually  accepted responsibility for his criminal conduct. (3:05cr153(JBA) Sentencing Mem. [Doc. # 136] 13, 27, 26.)   In the plea agreement (3:05cr153(JBA) [Doc. #68]), the Government agreed to recommend that the Court reduce Petitioner's sentence by two levels under Section 3E1.1(a) of the United States Sentencing Guidelines based on "defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense."   The Government agreed to file a motion recommending a further offense level reduction under Section 3E1.1(b), based on the "defendant's prompt notification of his intention to enter a guilty plea." (Plea Agreement at 5.) Petitioner's claims on this basis are without merit.

The Government did, in fact, disclose the details of Mr. Yalincak's cooperation and recommended reduction and downward departure on both accounts.  (*See* 3:05cr111(JBA) Gov't. Mot. for Downward Departure [Doc. # 136]; Gov't Mot. for Downward Departure Pursuant to U.S.S.G. § 3E1.1(b) [Doc. # 139]; *see also* 3:03cr153(JBA) Sentencing Mem. [Doc. # 136] 26–27 ("[Petitioner] did advise the Government of his intention to plead guilty to both indictments relatively early, thus saving the Government considerable time[] preparing the cases for trial" and "[t]herefore, the Government, somewhat grudgingly, continues to recommend acceptance of responsibility.").) The Government's articulated reluctance in making its recommendations does not mean that the Government breached the plea agreement. *See U.S. v. Benchimol*, 471 U.S. 453, 455 (there is no implied–in–law requirement that the Government commit itself to "enthusiastically" make a particular recommendation to the sentencing court). *See also id.* at 457 (Stevens, J., concurring) ("If the Government erred in failing to recommend affirmatively the proper sentence, the time

to object was at the sentencing hearing or on direct appeal.").  Mr. Yalincak did not object to the Government's semantics at sentencing, and the Court awarded the full three–level reduction for acceptance of responsibility as well as a departure for substantial assistance under § 5K1.1.  Petitioner's claims on this basis are without merit.

In addition, Mr. Yalincak also argues that the Government breached the terms of its cooperation agreement with him in the months following his sentencing.  (Pet'r. Mot. to Vac. Sent. at 16.)  In particular, Petitioner argues that the Government agreed to notify Immigration and Customs Enforcement ("ICE") of his cooperation if ICE were to initiate immigration proceedings against him.  Mr. Yalincak recalls "that a section of the cooperation agreement stated that the Government 'shall' inform the relevant agency of the Petitioner's cooperation."  (*Id.* at 17–18.)  The Cooperation Agreement states: "[t]he Government will inform the sentencing Court and the Probation Office of the nature and extent of the defendant's cooperation, including its investigative or prosecutorial value . . . or the lack of its value . . . .  In addition, the Government will make this information known to any other administrative or governmental entity designated in writing by the defendant's counsel" (3:05cr153(JBA) Cooperation Agreement [Doc. # 163] at 2–3.)

Thus, under the Cooperation Agreement, the Government's obligation to notify ICE of Petitioner's cooperation would arise upon Petitioner's counsel's written designation of ICE as an "administrative or governmental entity."  (*Id.*)  The Government complied with these terms, construing Mr. Yalincak's memorandum in support of his § 2255 petition, filed on October 30, 2008, as such a request.  Thereafter, the Government sent ICE a notification

letter on November 5, 2008.[3]  (Ex. 9 to Gov't Resp. [Doc. #11].)  Mr. Yalincak fails to show any breach by the Government of either the plea or cooperation agreements in this respect.

> **B.**    **The Plea in the Bank Fraud Indictment Was Not Knowing and Voluntary**

In general, the validity of a guilty plea can be attacked on collateral review only if first challenged on direct review.  However, if such a claim has not been presented on direct review, a § 2255 petitioner may be able to successfully challenge a guilty plea conviction based on a Rule 11 violation only by establishing either "cause" for the failure to bring a direct appeal and "actual prejudice" from the alleged violations.  *See, e.g.*, *Zhang v. United States.*, 506 F.3d 162, 166 (2d Cir. 2007).  To satisfy the "cause" requirement, Petitioner must show circumstances that "cannot be fairly attributed to him."  *Marone v. U.S.*, 10 F.3d 65, 67 (2d Cir. 1993).

Rule 11 of the Federal Rules of Criminal Procedure is designed to ensure that a defendant's guilty plea is "a voluntary and intelligent choice among the alternative courses of action open to the defendant."  *United States v. Renaud*, 999 F.2d 622, 624 (2d Cir. 1993).  To accomplish this, the Rule sets forth several requirements for plea allocution and requires the court to determine that "the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)."  Fed. R. Crim. P. 11(b)(2).

---

[3] The Government notes that it was unable to locate a written request by Petitioner to advise ICE of his cooperation, but that, "construing Petitioner's [October 30, 2008] memorandum as such a request, the Government notified ICE, by letter dated November 5, 2008, of his cooperation." (Gov't Resp. [Doc. # 11] 7.)  Petitioner does not dispute that there was no prior written request.

Mr. Yalincak argues that his guilty plea was not a "'voluntary and intelligent choice among the alternative courses of action open to the defendant.'" (Pet'r. Mem. 43) (citing *United States v. Andrades*, 169 F.3d 131, 136 (2d Cir. 1999). Though it is not clear what he means by "alternative courses of action," the Court interprets Mr. Yalincak to argue that there was no factual basis for his plea.[4]  His attorney's Memorandum in Support of his Motion to Vacate, argues that "there was insufficient evidence to establish an intent to defraud the Bank of New York versus the Union Bank of Switzerland" and "there were no material misstatements to the Bank of New York that exposed it to actual or potential loss." (Pet'r. Mem. 43.)  Mr. Yalincak contends that "at all times relevant to the Bank Fraud Indictment, the Bank of New York ("BONY") was simply a holder in due course of the funds obtained by the Petitioner from the UBS, and was never exposed to a risk of loss.  (*Id.* at 46.) On this basis, Petitioner argues that the Rule 11 plea colloquy was tainted and led to a "constitutional or jurisdictional error." (*Id.* at 43.)

While there is "no specific dialogue that must take place in order to comply with Rule 11(f)'s requirement that the district court satisfy itself regarding the factual basis for defendant's guilty plea," the court "must 'assure itself . . . that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty.'" *Andrades*, 169 F.3d at 136 (citing *United States v. Maher*, 108 F.3d 1513, 1524 (2d Cir. 1997)).  In making factual–basis determinations, the court may rely on defendant's own admissions, information from the government, or other information appropriate to the specific case. *Maher*, 108 F.3d at 1524.  In *Andrades*, the Second Circuit

---

[4] Along the same lines, Mr. Yalincak argues that counsel was ineffective in failing to move to dismiss the indictment.  This argument is addressed *infra*.

noted that "a reading of the indictment to the defendant coupled with his admission of the acts described in it [is] a sufficient factual basis for a guilty plea, as long as the charge is uncomplicated, the indictment detailed and specific, and the admission unequivocal." 169 F.3d at 136 (internal citations omitted).

Under the Federal Bank Fraud Statute, the Government must show that a defendant engaged in a pattern of deceptive conduct designed to deceive a federally chartered or insured financial institution. *United States v. Rodriguez*, 140 F.3d 163, 167 n.2 (2d Cir. 1998). Courts read this statute "expansively." *United States v. Barrett*, 178 F.3d 643, 647 (2d Cir. 1999). The Second Circuit has interpreted the Federal Bank Fraud Statute to require that the Government prove that (1) the defendant engaged in a deceptive course of conduct by making material misrepresentations, and (2) that the defendant intended to victimize the bank by exposing it to actual or potential loss. *United States v. Rigas*, 490 F.3d 208, 231 (2d Cir. 2007). Actual or potential loss to the bank is not an element of the crime of bank fraud but merely a description of the required criminal intent. *Id.* The Government must prove that, at the time of the execution of the scheme, the bank had its deposits insured by the FDIC as defined by 18 U.S.C. § 20. *See, e.g.*, *Rodriguez*, 140 F.3d at 168–69 (this requirement arises from the "statute's purpose of protecting the federal government's interest, as an insurer of financial institutions").

The crux of Mr. Yalincak's argument is that "the Government did not prove and could not have proved the first element [of Federal Bank Fraud]: intent to defraud BONY with material misrepresentations, or any federally chartered or insured financial institution. (Pet'r. Mem. at 47.) However, under the circumstances of Mr. Yalincak's case, the Government would have been able to prove all elements of the bank fraud offense, and Mr.

Yalincak agreed with the Government's factual rendition during his plea colloquy. First, the "deceptive course of conduct" requirement was satisfied: Petitioner sent two counterfeit BONY checks totaling more than $17 million to be deposited to his Swiss UBS account; he requested UBS to wire transfer $2.5 million to Petitioner's Daedalus Capital Partners accounts; and he deposited a counterfeit JP Morgan Chase check into his SACS account, the number for which he had imprinted on the counterfeit BONY checks sent to UBS. Petitioner then sought to withdraw, $1.7 million and then $2.5 million from the account to which the UBS $2.5 million had been deposited. Had BONY permitted Petitioner to withdraw $1.7 million or $2.5 million, it would have given Petitioner funds that were in its custody and control that rightfully belonged to UBS, thus exposing BONY to a potential loss by being required to reimburse UBS. (*See* Bank Fraud Indictment, 3:05cr111 [Doc. # 1] at 2–3.)[5]

Mr. Yalincak pleaded guilty to violating 18 U.S.C. § 1344(1) and (2), the Federal Bank Fraud Statute, and admitted his conduct in open court and in writing:

> THE DEFENDANT: I, with the assistance of other individuals, opened a bank account with UBS AG, and three corporate accounts with the Bank of New York. I and these individuals drafted two checks and forwarded the checks to UBS AG in Zurich, Switzerland for deposit. The purpose of depositing these two checks was to induce USB AG to credit the amounts of

---

[5] Petitioner relies on *Rodriguez* for the proposition that BONY was a "holder in due course" and thus not exposed to potential loss by his conduct. (Pet'r. Mem. at 46.) However, the Government is correct that *Rodriguez* can be distinguished from the circumstances here. (Gov't Opp'n at 19.) There, the defendant engaged in a scheme to defraud a friend's employer: a publishing company issued three valid checks which the bank took as a holder in due course, and the Second Circuit found that because the bank was not exposed to loss (only the publishing company was), the Bank Fraud Statute was inapposite. *Rodriguez*, 140 F.3d at 168. Here, had BONY honored Petitioner's requests, first to withdraw $1.7 million and then the $2.5 million, BONY would have borne the loss.

the checks to my account with UBS AG and to thereafter move the credited
funds to the Bank of New York.  I was then to make a withdrawal of a
portion of the funds from the Bank of New York, and deposit the funds in an
associate's account. . . . The two checks[6] that were deposited in the UBS AG
account were invalid in that there were insufficient funds on the account on
which the checks were drawn.

THE COURT: And I take it you had knowledge that there [were] insufficient
funds to draw upon and that it was your intent in opening these accounts in
the way that you've described to defraud the banks from whom you sought
to withdraw the monies?

THE DEFENDANT: The original purpose of opening the account was not
this, but the rest of it is correct, your Honor.

(June 6, 2006 Plea Colloquy Tr., Ex. 2 to Gov't Resp. at 35:8–23; 37:4–12.)   The

Government's rendition corroborated Petitioner's description of these actions.  (*See id.* at

38:1–46:12.)   The Government's indictment, along with Mr. Yalincak's "unequivocal"

admission, are sufficient to meet the factual basis requirement of Rule 11(f).

C.   Claim that Counsel Was Ineffective

A claim of ineffective assistance of counsel is assessed under the two–pronged

standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984).  The first prong

considers whether counsel's performance was objectively unreasonable "under prevailing

professional norms."  *Id.* at 688.  To satisfy this element, an error must be "so serious that

counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment."  *Id.* at 687.  Second, the petitioner must affirmatively prove prejudice by

showing that counsel's errors were so serious that they "deprive[d] the defendant of a fair

---

[6] Petitioner agreed with the Government's assertion that these checks were
counterfeit and amended his written petition to plead accordingly.  (*See* Petition to Enter
Plea of Guilty, 3:05cr111 [Doc. # 77] at 16.)

trial" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687, 694. Stated differently, an error by counsel does not warrant setting aside a conviction unless it had an "effect on the judgment." *Id.* at 692. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. An attorney's performance should not be viewed through the lens of hindsight, but rather assessed by "consider[ing] the circumstances counsel faced at the time" of the proceedings and from "counsel's point of view." *Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005). Counsel's "strategic choices . . . are virtually unchallengeable." *Strickland*, 466 U.S. at 690. A habeas petitioner will not prevail on an ineffective assistance claim by second–guessing or disagreeing with counsel's strategy. *Id.* at 689. However, a constitutionally inadequate performance may be established by a "show[ing] that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker," keeping in mind that "counsel does not have a duty to advance every nonfrivolous argument that could be made." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). Applying these principles results in an ineffective assistance of counsel test which "is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on it." *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007).

In connection with a guilty plea, an attorney's representation is deemed to have been effective so long as he or she "communicated to the defendant the terms of the plea offer,"

"informed [the defendant] of the strengths and weaknesses" of the prosecution's case, and provided the defendant with an "informed opinion" on "whether a particular plea appears to be desirable." *Purdy v. United States*, 208 F.3d 41, 45–48 (2d Cir. 2000). To establish prejudice where the defendant pleaded guilty, the habeas petitioner must show that, but for counsel's deficient representation, the petitioner "would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). This presents a "formidable barrier" in cases where, as here, the petitioner has asked the court to enter a plea of guilty, attested under oath and in open court that he or she understood the consequences of the decision to plead guilty and read and signed a written plea agreement. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *United States v. Hernandez*, 242 F.3d 110, 112–13 (2d Cir. 2001).

### 1. Failure to Prosecute an Appeal

Mr. Yalincak claims that Attorney Bernard Grossberg's performance was ineffective because he failed to prosecute Mr. Yalincak's case on appeal. Mr. Grossberg, on Mr. Yalincak's behalf, timely filed notice of his appeal, and it was docketed in the Second Circuit Court of Appeals (07–1655) on April 20, 2007. (Ex. 13 to Gov't Resp. [Doc. #11].) However, Attorney Grossberg informed Petitioner in July 2007 that he could no longer represent him on appeal.[7] (Pet'r. Mem. [Doc. #9] 14.) Mr. Yalincak maintains that he was "erroneously

---

[7] Attorney Grossberg was sued in the Southern District of New York by the Trustee of Daedalus Capital, the hedge fund that Mr. Yalincak founded and used in order to perpetrate his fraud, and he thus informed Mr. Yalincak that he could no longer represent him, due to the resulting conflict of interest. However, Attorney Grossberg was still counsel of record representing Mr. Yalincak when the appeal was withdrawn on August 28, 2007. (*See* Ex. 1 and 13 to Gov't Resp.) Both Mr. Yalincak and Mr. Grossberg signed the Voluntary Dismissal Agreement. (*See id.*)

informed by Attorney Grossberg . . . that his request to proceed in forma pauperis and/or request for appointment of counsel had been denied." (Pet'r. Mem. [Doc. # 8] at 14.)  After being informed that Mr. Grossberg could not represent him, Mr. Yalincak voluntarily withdrew his appeal and it was dismissed.  (*See* Ex. 1 to Gov't Resp. [Doc. # 11].)  Mr. Yalincak has provided an affidavit from Attorney Grossberg, and his own affidavit, which support his description of events.  Mr. Grossberg explained:

> After the petitioner was sentenced, he and I met in my office in Boston, . . and the issue of whether or not it would be in his best interest to pursue an appeal of the sentence imposed on the ground that the government had, *inter alia*, breached his plea agreement at the time of sentencing. . . .
>
> As a result of the Bankruptcy Trustee's lawsuit, it was my opinion that a potential conflict of interest may have developed which questioned whether or not I could continue to represent the petitioner on appeal. . . .
>
> It is my understanding that on or about August 6, 2007, the petitioner wrote the Clerk of the Court of Appeals and the Clerk of the District Court and requested forms to proceed *in forma pauperis* . . . . [i]t is my further understanding that the petitioner mailed a *pro se* motion to proceed *in forma pauperis*, request for the appointment of counsel, and a completed CJA Form 23 to the Clerk of the Court of Appeals. . . [who] forwarded his request to my office. Since the documents were returned to my office by the Clerk's Office, I believed that the petitioner's request to proceed *in forma pauperis* and, therefore, his request for appointment of counsel had been denied. . . .
>
> I recall that at this time, I communicated with the petitioner by telephone and advised him that the Court had denied his request to proceed *in forma pauperis* and request for the appointment of counsel . . . .

(Ex. 2, Pet'r. Mem. in Supp. of 2d Mot. to Supplement R. at ¶¶ 5, 8, 9–11.)

The Supreme Court has held that a lawyer who disregards specific instructions from a client–defendant to file a notice of appeal acts in a manner that is professionally

13

unreasonable, thus satisfying the first *Strickland* prong.  *See, e.g., Rodriquez v. United States*, 395 U.S. 327, 330 (1969); *Peguero v. United States*, 526 U.S. 23, 28 (1999).  In *Roe v. Flores–Ortega*, the Supreme Court held that if counsel has consulted with the defendant about an appeal, counsel performs in a professionally unreasonable manner by failing to follow the defendant's express instructions with respect to an appeal.  528 U.S. 470, 478 (2000).  Here, Attorney Grossberg clearly consulted with Mr. Yalincak and together they timely filed a Notice of Appeal.  However, the facts provided by Attorney Grossberg's affidavit create sufficient uncertainty that, as discussed *supra*, the Court will not deem Petitioner's claims procedurally defaulted and thus there is no prejudice resulting from the circumstances of the Voluntary Dismissal Agreement.

### 2.  Failure to Inform the Court that Petitioner Would Suffer Immigration Consequences as a Result of Incarceration

Mr. Yalincak argues that Attorney Grossberg's performance was also deficient because he failed to properly inform the Court of relevant immigration considerations. (Pet'r. Mem. at 36.)  Petitioner's reasoning is obscure, though it appears that he attributes the outcome of the immigration proceedings to the sentence imposed by this Court: "given the fact that [Petitioner] had already served twenty (20) months in pretrial detention until his release on bail pending sentence on January 5, 2007, while he would have still been placed in removal proceedings as an alleged aggravated felon, [Petitioner] would have nonetheless been eligible for discretionary relief from removal in the form of an Immigration & Nationality Act ("INA") § 209(b) or (c) waiver in conjunction with an application for adjustment of status under 8 U.S.C. § 1159(b) or (c)."  (*Id.* at 37.)  There is no doubt that the Court and all parties were well aware that Petitioner "may be subject to removal from

the United States" as a consequence of his guilty pleas.  (Plea Agreement 3:05cr153 [Doc. # 68] 6.)  Though Mr. Yalincak purports to believe that "this Court did not wish to foreclose the possibility of waiver being available for this Petitioner, in imposing its sentence" (*see id.* at 38), this was never at issue and the Court's reasons for its sentence were set out in open court.

Alluding to *Hill v. Lockhart*, Mr. Yalincak also argues that had he known he would not be granted a waiver of inadmissibility in his immigration proceedings, he would not have pleaded guilty and would have taken his chances at trial.  In the affidavit accompanying his Final Reply Memorandum of Law [Doc. # 61] Mr. Yalincak states: "In deciding to plead guilty, a fundamental part of my decision was  based on the fact that my plea to one count each of wire fraud and bank [fraud] would *not* virtually guarantee my deportation" (Ex. C to Pet'r. Final Rep. Mem. ¶ 10 (emphasis in original)), but "I was found not to be eligible for a waiver of inadmissibility and found to have no relief available from removal from the United States" (*See id.* ¶¶ 10–11).  Mr. Yalincak concludes this section of his affidavit: "Given the fact that my guideline sentence, without any acceptance of responsibility or the relatively small reduction for my cooperation, would have only been two to three years higher, *I would not have hesitated for a second to go to trial to preserve whatever chance I may have had to stay in my home country.*" (*Id.* (emphasis in original).)

 Mr. Yalincak also offers his letters from two attorneys, Mr. Gania (letter dated January 3, 2011) and Mr. Grossberg (letter dated November 3, 2010), apparently to support his claim that counsel told him that he would be eligible for a waiver of inadmissibility under Section 209(c) of INA, 8 U.S.C. § 1159(c).  These letters do not provide support for his claim that he believed he would receive a waiver notwithstanding his felony conviction.  Attorney

Grossberg writes that Attorney Gania had conducted research and confirmed that "irregardless [sic] of the characterization of his conviction, if Mr. Yalincak was granted a waiver under INA 209(c) it would have permitted him to stay in the United States" (Grossberg Ltr., Ex. A to Pet'r. Mot. to Supp. Record [Doc. # 51] at 22), reflecting the discretionary nature of the waiver. "The Secretary of Homeland Security or the Attorney General *may waive* any other provision of such section . . . with respect to such an alien for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest." 8 U.S.C. § 1159(c) (emphasis added).[8]

In contrast to Petitioner's belief that "the unavailability of the waiver [was] due to this Court's re–incarceration of the Petitioner and his placement into expedited removal proceedings" (*see* Pet'r. Mem. at 39), his own attorneys opine that the reason he was deemed ineligible for a waiver was an erroneous conclusion by the immigration court:

> Mr. Yalincak was also advised that he *would* be eligible for a waiver of inadmissibility under INA 209(c), 8 C.F.R. § 1209.2(b) or (c), even if he was found to have been convicted of an aggravated felony. . . . This determination was based on my legal research and discussions with Attorney Gania and explained in detail to Mr. Yalincak.  However, this advice was incorrect because the Immigration Court found that Mr. Yalincak lost his derivative asylee status when his mother lost her asylee status thus making him ineligible for the sole waiver that would have permitted him to remain in the United States.

(*See* Grossberg Ltr. at 22.)  Attorney Grossberg believes this decision of the Immigration Court was in error,

---

[8] In the same letter, Attorney Grossberg recognizes that Section 209(c) is discretionary: "At sentencing, I confirmed that Mr. Yalincak's sole chance of staying in the United States would be dependent upon whether he is granted a waiver."  (Grossberg Ltr. at 22 n.29.)

> [U]nder the provisions governing derivative asylum, Mr. Yalincak's
> derivative asylee status should not have automatically been terminated upon
> his mother's loss of her case . . . .This position was based on the simple and
> ordinary meaning of the statute, 8 U.S.C. § 1158(b)(3)(B), which governs
> termination of derivative asylum and requires automatic termination of
> derivative asylee status of a child. . . . However, . . . applying the literal rule,
> a child is defined under related provisions of the INA, as an individual under
> the age of 21 at the time the lead applicant's asylee status is terminated, and
> Mr. Yalincak was not a "child" within the meaning of the INA.

(*Id.* at 23.)  Whatever may have occurred in the immigration court does not contradict the

undisputed record that Mr. Yalincak knew of the risk of deportation when he entered his

guilty plea and when he acknowledged the collateral consequence of his conviction, and he

attested that no promises had been made to him which influenced his decision to plead

guilty.

While the Second Circuit has expressed doubt as to whether a "defendant's

self–serving, post–conviction testimony regarding his intent with respect to a plea offer

would be sufficient, by itself, to establish a 'reasonable probability' that he or she would have

accepted the plea agreement," it has found "[i]n some cases, a petitioner's affidavit stating

that he would have accepted a plea deal absent an error by counsel, combined with a " 'great

disparity' " between possible sentencing outcomes, may provide sufficient evidence that a

petitioner would have acted differently but for counsel's error.  *See United States v. Gordon*,

156 F.3d 376, 380–81 (2d Cir. 1998).  Here, however, the Court finds that there was no "great

disparity"—when Petitioner pled guilty, he knew that he would be subject to deportation,

and was never told that "eligibility" for consideration of a waiver was a guarantee of its

receipt.  Even if either Attorney Grossberg or the immigration court was wrong about a

derivative asylee's waiver of eligibility status, Petitioner's retrospective view of the impact of

his attorney's advice on his decision to plead guilty does not demonstrate constitutionally deficient performance.[9]

### 3. Failure to Move to Dismiss the Indictment, and Failure to Properly Advise Petitioner Regarding his Plea of Guilty

As Mr. Yalincak argued in support of his claim of involuntary plea, he maintains that the Government had "insufficient evidence to establish an intent to defraud the Bank of New York versus the Bank of Switzerland, AG," and "there were no material misstatements to the Bank of New York that exposed it to actual or potential loss." (Pet'r. Mem. [Doc. # 9] at 43.) Consequently, Petitioner argues that Attorney Grossberg was "deficient for failing to move to dismiss the Bank Fraud Indictment, fail[ing] to conduct any reasonable research other than immediately recommending that the Petitioner cooperate . . , [failing] to properly inform the Petitioner prior to his entry of the guilty plea as to whether the Government would be able to sustain a conviction without proving that [the Bank of New York] was actually exposed to a risk of loss." (*See* Pet'r. Mem. at 47.) The Second Circuit has noted the difficulty of challenging counsel's strategic decisions after having plead guilty: "to raise a claim despite a guilty plea . . , the petitioner must show that the plea agreement was not knowing and voluntary, *United States v. Da Cai Chen*, 127 F.3d 286, 289–90 (2d Cir. 1997),

---

[9] Mr. Yalincak also argues that counsel was ineffective under *Padilla v. Kentucky*,---U.S. ----, 130 S.Ct. 1473 (2010). (Pet'r. Final Rep. Mem. [Doc. # 61] at 8–9.) However, regardless of whether *Padilla* created a "new rule" for the purposes of retroactive application under *Teague v. Lane*, 489 U.S. 288 (1989), the above–cited facts show that Mr. Yalincak was well aware of the risk he faced of deportation were he to plead guilty, and therefore *Padilla* is inapposite here. *Padilla*, 130 S.Ct. at 1481–82 (because of the "unique nature of deportation" an attorney provides ineffective assistance of counsel by failing to inform a client that a guilty plea carries a risk of deportation).

because "the advice he received from counsel was not within acceptable standards," *United States v. Torres*, 129 F.3d 710, 715–16 (2d Cir. 1997).

As discussed above, the circumstances surrounding Mr. Yalincak's plea agreement and plea colloquy support the conclusion that Mr. Yalincak's plea was knowing and voluntary. Further, the Government had significant evidence against him, as discussed *supra*. (*See* June 6, 2006 Plea Colloquy, Ex. 2 to Gov't Resp. [Doc. # 11] at 39:4–40:9; *see also* Gov't Resp. at 17.) In light of this evidence, it was not constitutionally deficient performance for Attorney Grossberg to not file a motion to dismiss the indictment and to encourage Mr. Yalincak to plead guilty.

Petitioner has failed to show that but for Attorney Grossberg's errors, he would not have pleaded guilty and would have instead gone to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

### D.  Selective Prosecution

Finally, Mr. Yalincak claims that he was selectively prosecuted by the Government because of his national origin and immigration status, in violation of the Equal Protection clause of the Fourteenth Amendment. (Pet'r. Mem. at 54.) A selective prosecution claim is not a defense on the merits to a criminal charge; rather it is an "independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). To state a claim for selective prosecution a petitioner must provide "clear evidence that the prosecutorial decision or policy in question had both a discriminatory effect and was motivated by a discriminatory purpose." *United States v. Alameh*, 341 F.3d 167, 173 (2d Cir. 2003). A selective prosecution claim also requires proof of intentional discrimination based on an impermissible standard such as race

or religion.  *Id.* at 464.  A defendant seeking to show discriminatory purpose must show "'that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.' " *Alameh*,  341 F.3d at 173 (citing *Wayte v. United States*, 470 U.S. 598, 610 (1985)).

Mr. Yalincak fails to provide any "clear evidence" to support such a claim.  Mr. Yalincak offers an affidavit prepared by Attorney Grossberg which offers the names of several other people that the Government could have investigated and prosecuted, and did not.  (*See* Grossberg Dec. ¶¶ 18, 27.)  These allegations are insufficient, as Mr. Yalincak has not shown how a failure to prosecute these other people manifests an improper, discriminatory motivation that animated his own prosecution.  As a result, Mr. Yalincak's selection prosecution claim fails.

### E.   Evidentiary Hearing

"It is within the district court's discretion to determine whether a hearing is warranted."  *Pham v. United States*, 317 F.3d 178, 184 (2d cir. 2003).  An evidentiary hearing is not required where the record, taken together with the moving papers and any exhibits or affidavits submitted, plainly demonstrates that the moving party is not entitled to relief and the court concludes that the petitioner's claims are truly without merit.  28 U.S.C. § 2255(b); *United States v. Aiello*, 900 F.2d 528, 534 (2d Cir. 1990).  If material facts are in dispute, a hearing should be held.  *See, e.g.*, *Newfield v. United States*, 565 F.2d 203, 207 (2d Cir. 1977) (noting the difference between the movant making a "bald allegation of mental incompetence" with no evidentiary facts alleged and the movant raising "detailed and controverted issues of fact").

In light of the foregoing discussion, because it plainly appears from the Court's examination of the record and the moving and opposing briefs that Mr. Yalincak's petition lacks any meritorious claim, and there are no material facts in dispute, no evidentiary hearing is necessary under these circumstances.

IV. Conclusion

Accordingly, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, for relief pursuant to 28 U.S.C. § 2255 [Doc. # 8] is DENIED.  Because Mr. Yalincak has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 28th day of September, 2011.